UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHEN NYLEN,

               Plaintiff,

v.

CITY OF GRAND RAPIDS and
SERGEANT BARRY BRYANT,

               Defendants.

Case No. 1:17-cv-00716-RJJ-PJG

HON. ROBERT J. JONKER

---

Stephen J. van Stempvoort (P79828)
MILLER JOHNSON
Attorneys for Plaintiff
45 Ottawa Avenue SW, Suite 1100
Grand Rapids, MI  49503
616.831.1700
vanstempvoorts@millerjohnson.com

Patrick James Lannen (P35171)
Lindsay Anne Bondy (P70951)
Elliot J. Gruszka (P77117)
Attorneys for Defendant City of Grand Rapids
300 Monroe Avenue, NW – Suite 620
Grand Rapids, MI  49503-2206
616.456.4026
plannen@grcity.us
lbondy@grand-rapids.mi.us
egruszka@grcity.us

---

**PLAINTIFF'S BRIEF IN SUPPORT OF HIS MOTION FOR
SUMMARY JUDGMENT**

Table of Contents

Page

Index of Authorities ......................................................................................................... iii

Introduction ....................................................................................................................1

     A.    Nylen begins street preaching in 2015....................................................1

     B.    After experiencing medical issues, Nylen selects a small sound amplifier specifically because it will allow him to modulate the volume of his speech..........................................................................2

     C.    Law enforcement officers routinely prohibit Nylen from using any amplified device, informing him that it is prohibited by Section 9.63(1) of the City's Noise Ordinance....................................................3

     D.    Sergeant Bryant confirms that he will cite Nylen if Nylen uses a sound amplifier within Grand Rapids, regardless of the context of the speech..........................................................................................5

     E.    Nylen attempts to learn what Section 9.63(1) means, but the City refuses to tell him.....................................................................6

Argument ........................................................................................................................8

I.    Section 9.63(1) is unconstitutionally vague..........................................................9

     A.    An ordinance is unconstitutionally vague if it uses a purely subjective standard for measuring when sound becomes prohibitable. ...................................................................................9

     B.    It is unavoidable that Section 9.63(1) is not limited to unreasonably loud sounds. ..............................................................................10

         1.    Michigan state courts would apply Section 9.63(1)'s plain language and would not import a reasonableness standard that is not already there. ..........................................................10

         2.    Section 9.63(1) is not limited to only "unreasonably loud noise." ..................................................................................13

         3.    The City has not bound itself—through practice or otherwise—to any single interpretation of Section 9.63(1), much less a non-vague one. ...................................................17

Table of Contents
(continued)

Page

II.  Section 9.63(1) is overbroad and not narrowly tailored to a compelling
     government interest..............................................................................................19

     A.  A blanket prohibition on "any noise of any kind" on a public way
         is significantly overbroad...........................................................................19

     B.  Section 9.63(1) is not narrowly tailored to a compelling
         government interest..................................................................................20

         1.  Section 9.63(1) is content-based. ...................................................20

         2.  The City has not proved a "close fit" between Section 9.63(1)
             and a significant government interest. ...........................................21

         3.  Nylen has no alternative means of exercising his rights................23

III. Nylen is entitled to an injunction and damages against Sergeant Bryant. .........24

Conclusion  ...........................................................................................................25

Index of Authorities

Page

**Cases**

*American-Arab Anti-Discrimination Comm. v. City of Dearborn,*
    418 F.3d 600 (6th Cir. 2005) ............................................................................. 19, 23

*City of Lakewood v. Plain Dealer Pub. Co.,*
    486 U.S. 750 (1988) ............................................................................................ 18

*Clary v. City of Cape Girardeau,*
    165 F. Supp. 3d 808 (E.D. Mo. 2016) .............................................................. 12, 19

*Coates v. City of Cincinnati,*
    402 U.S. 611 (1971) ............................................................................................ 9, 17

*Covenant Med. Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.,*
    895 N.W.2d 490 (Mich. 2017) .......................................................................... 11

*Deegan v. City of Ithaca,*
    444 F.3d 135 (2d Cir. 2006) .............................................................................. 16, 21, 25

*Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County,*
    274 F.3d 377 (6th Cir. 2001) ............................................................................. 19

*Fadaie v. Alaska Airlines, Inc.,*
    293 F. Supp. 2d 1210 (W.D. Wash. 2003) ....................................................... 22

*Gaughan v. City of Cleveland,*
    212 F. App'x 405 (6th Cir. 2007) ..................................................................... 9, 11, 15

*Grayned v. City of Rockford,*
    408 U.S. 104 (1972) ............................................................................................ 9, 10, 24

*Great Lakes Soc'y v. Georgetown Charter Twp.,*
    761 N.W.2d 371 (Mich. Ct. App. 2008) .......................................................... 11

*Harman v. City of Santa Cruz,*
    261 F. Supp. 3d 1031 (N.D. Cal. 2017) ........................................................... 22

*Hassay v. Mayor,*
    955 F. Supp. 2d 505 (D. Md. 2013) .................................................................. 15, 22, 23

*Howard Opera House Assocs. v. Urban Outfitters, Inc.,*
    131 F. Supp. 2d 559 (D. Vt. 2001) ................................................................... 22

Index of Authorities
(continued)

Page

*In re Treasurer of Wayne Cty. for Foreclosure*,
    732 N.W.2d 458 (Mich. 2007) ................................................................................................... 11

*Jim Crockett Promotion, Inc. v. Charlotte*,
    706 F.2d 486 (4th Cir. 1983) ..................................................................................................... 20

*Kalinoff v. Columbus Twp.*,
    542 N.W.2d 276 (Mich. Ct. App. 1995) ................................................................................... 11

*Kovacs v. Cooper*,
    336 U.S. 77 (1949) ............................................................................................................... 20, 24

*Lansing v. Hartsuff*,
    539 N.W.2d 781 (Mich. Ct. App. 1985) .............................................................................. 13, 14

*Maldonado v. Monterey Cty.*,
    330 F. Supp. 1282 (N.D. Cal. 1971) ........................................................................................ 25

*McCullen v. Coakley*,
    134 S. Ct. 2518 (2014) .......................................................................................................... 19, 21

*People v. Gasper*,
    888 N.W.2d 116 (Mich. Ct. App. 2016) ............................................................................. 12, 17

*People v. N.Y. Trap Rock Corp.*,
    442 N.E.2d 1222 (N.Y. 1982) ..................................................................................................... 9

*People v. Pinkney*,
    912 N.W.2d 535 (Mich 2018) .................................................................................................... 16

*People v. Rapp*,
    821 N.W.2d 452 (Mich. 2012) ................................................................................................... 11

*Perkovic v. Zurich Am. Ins. Co.*,
    893 N.W.2d 322 (Mich 2017) .................................................................................................... 16

*Planet Aid v. City of St. Johns*,
    782 F.3d 318 (6th Cir. 2015) ..................................................................................................... 20

*Reed v. Town of Gilbert*,
    135 S. Ct. 2218 (2015) ............................................................................................................... 20

*Reeves v. McConn*,
    631 F.2d 377 (5th Cir. 1980) ................................................................................ 9, 20, 21, 24, 25

Index of Authorities
(continued)

Page

*Saia v. New York*,
   334 U.S. 558 (1948)..................................................................................... 20

*Santa Monica Food Not Bombs v. City of Santa Monica*,
   450 F.3d 1022 (9th Cir. 2006) ................................................................... 18

*Sau-Tuk Indus. v. Allegan Cnty.*,
   892 N.W.2d 33 (Mich. Ct. App. 2016) .................................................... 11

*Smith v. Goguen*,
   415 U.S. 566 (1974)..................................................................................... 10

*Speet v. Schuette*,
   726 F.3d 867 (6th Cir. 2013) ...................................................................... 17

*Township of Plymouth v. Hancock*,
   600 N.W.2d 380 (Mich. Ct. App. 1999) .................................................. 12

*U.S. Labor Party v. Pomerleau*,
   557 F.2d 410 (4th Cir. 1977) ............................................................... 21, 25

*U.S. Labor Party v. Rochford*,
   416 F. Supp. 204 (N.D. Ill. 1975) ....................................................... 10, 20

*United Pentecostal Church v. Steendam*,
   214 N.W.2d 866 (Mich. Ct. App. 1974) .................................................. 12

*United States v. Doe*,
   968 F.2d 86 (D.C. Cir. 1992) ............................................................... 21, 22

*Village of Hoffman Estates v. Flipside*,
   455 U.S. 489 (1982)..................................................................................... 12

*Ward v. Rock Against Racism*,
   491 U.S. 781 (1989)..................................................................................... 21

**Other Authorities**

American Heritage College Dictionary (4th ed. 2007)..................................... 13

City of Grand Rapids Ordinance § 1.13(1), (2) ................................................. 6

City of Grand Rapids, Noise Control Ordinance, § 9.62(9) ........................... 14

City of Grand Rapids, Noise Control Ordinance, § 9.62(12) ......................... 14

Index of Authorities
(continued)

Page

City of Grand Rapids, Noise Control Ordinance, § 9.62(20) ...................................................... 14

City of Grand Rapids, Noise Control Ordinance, § 9.62(21) ...................................................... 22

City of Grand Rapids, Noise Control Ordinance, § 9.63(1) ................................................. 1, 3-25

City of Grand Rapids, Noise Control Ordinance, § 9.63(2) ...................................................... 22

City of Grand Rapids, Noise Control Ordinance, § 9.63(3) ................................................. 11, 16

City of Grand Rapids, Noise Control Ordinance § 9.63(7) ...................................................... 22

City of Grand Rapids, Noise Control Ordinance, § 9.63(9) ...................................................... 22

City of Grand Rapids, Noise Control Ordinance, § 9.69 .......................................................... 23

City of Grand Rapids, Noise Control Ordinance, § 9.70 .......................................................... 22

City of Grand Rapids, Noise Control Ordinance, § 9.76 .......................................................... 22

OSHA Technical Manual, Section III: Chapter 5 - Noise, at 4, Fig. 3
    (https://www.osha.gov/dts/osta/otm/new_noise/#whatisnoise)................................................ 22

RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE ........................................................ 13

RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 1305 (2d ed. 2001)............................. 13

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1533 (2002)........................................... 13

**<u>Introduction</u>**

The City has not been able to settle on a definitive interpretation of Section 9.63(1), because it knows that it is between a rock and a hard place. Either there is no objective standard set forth in Section 9.63(1) at all, or the objective standard is a flat prohibition on all yelling, shouting, calling, and use of amplified devices, musical instruments, and the like on all public ways in Grand Rapids at all times. Either way, the ordinance is unconstitutional. If it is not unconstitutionally vague, then it is unconstitutionally overbroad.

Further, regardless of how Section 9.63(1) is interpreted, Stephen Nylen is entitled to an injunction. Sergeant Bryant reiterated at his deposition that he will enforce the ordinance against Nylen unless the amplified device is at a "whispering" volume. Sergeant Bryant also stated that he never considers the location of the person who is speaking when enforcing Section 9.63(1). But the First Amendment protects the use of reasonably amplified speech, and the cases are clear that reasonableness must be determined based on the context of the speech, including its location. Because Sergeant Bryant specifically intends to enforce Section 9.63(1) against Nylen without assessing whether Nylen's use of the amplified device is reasonable in light of the circumstances, Sergeant Bryant must be enjoined from doing so.

**<u>Factual Background</u>**

**A.      Nylen begins street preaching in 2015.**

As the Court is well aware, Nylen is an open-air preacher, motivated by his religious calling to share his faith with others. (**Ex. 1**, Nylen Declaration ¶¶ 2-3). Nylen's preaching is not limited to issues pertaining to abortion, nor does he preach solely in front of abortion clinics. Nylen attempts to evangelize in a broad sense, and he preaches "all around the city" of Grand Rapids. (**Ex. 2**, Nylen Dep. at 63; *id*. at 18). Nylen has preached to many different sorts of audiences, including a "crowd of professing Christians" waiting outside of Van Andel

arena at a Christian rock concert, a crowd gathered for a lecture by atheist Richard Dawkins at Fountain Street Church, and at prolife gatherings, "because those that are pro-life need to hear the gospel as well." (*Id*. at 50, 52). Nylen has also preached in cities other than Grand Rapids, including Wyoming, Cadillac, the Detroit area, and Ann Arbor. (*Id*. at 35-36, 40-41).

        If Nylen intends to preach at a larger event, he ordinarily calls ahead and advises local law enforcement that he will be "there with an amplifier, preaching from the Bible" during a specific time frame. (*Id*. at 37). Once he arrives at the event, he generally walks around to any officers who are at the event, introduces himself, and advises the officers that he will be preaching. (*Id*.). Nylen also often videotapes while he preaches. (*Id*. at 38).

        Nylen preaches on the streets or sidewalks of Grand Rapids every week. (*Id*. at 67). Sometimes Nylen's listeners "come and weep and . . . receive ministry and prayers and connections to the local church." (*Id*. at 69). On other occasions, people have threatened Nylen, thrown beer and other liquids on him, and uttered death threats. (*Id*. at 68).

    **B.**    **After experiencing medical issues, Nylen selects a small sound amplifier specifically because it will allow him to modulate the volume of his speech.**

        Soon after he began open-air preaching, Nylen's throat became very raw, and he began experiencing blood in his throat on a weekly basis. (*Id*. at 62). An amplifier would alleviate those issues, and would also allow him to speak in a normal tone of voice instead of yelling—a useful rhetorical strategy. (*Id*. at 61-62). After researching his options, Nylen learned that "many, many" other open-air preachers use small, portable amplifiers in their preaching. (*Id*. at 67). Nylen ultimately settled upon a small amplifier that was recommended by several other open-air preachers. (*Id*. at 66).

        One of the reasons that Nylen picked this particular version of amplifier was that it has a volume control dial, which allows him to remain in control of the volume of his speech,

so that he can modulate it if his listeners inform him that it is too loud or too quiet. (*Id*. at 29-32, 51-52). "[P]art of having compassion towards people," according to Nylen, is not "sitting there with a bull horn, you know, at your face." (*Id*. at 30).

>    **C.    Law enforcement officers routinely prohibit Nylen from using any amplified device, informing him that it is prohibited by Section 9.63(1) of the City's Noise Ordinance.**

In all the various cities in which Nylen has preached while using an amplifier over the last three years, the City of Grand Rapids is the only one in which any police officer has instructed him not to use an amplifier. (*Id*. at 38, 41). What makes Grand Rapids different is Section 9.63(1) of the City's Noise Ordinance, which prohibits Grand Rapidians from "mak[ing] . . . upon a public way . . . any noise of any kind by crying, calling or shouting, or . . . by means of any . . . sound amplifying . . . device."[1]

As has become evident through discovery in this case, the correct meaning and application of Section 9.63(1) is bedeviling. The evidence is uncontroverted that law enforcement officers have told Nylen that Section 9.63(1) means all manner of things, including that it (1) prohibits the use of an amplified device but does not prohibit shouting; (2) prohibits all amplified devices as well as shouting; (3) prohibits neither amplification nor shouting per se but instead prohibits all sound above an unspecified decibel level; and (4) prohibits sound that causes other people to be disturbed.

The evidence is undisputed that, on at least the following occasions, Grand Rapids law enforcement officers instructed Nylen to stop preaching with an amplified device:

>    • *August 12, 2016, at approximately noon on the sidewalk in front of an abortion clinic*. Officer Johnston told Nylen that he could be cited under the Noise Ordinance "if he was using the sound amplification device at a volume that it could be heard from inside by nearby residents . . . and they made a complaint." (**Ex. 4**, 8/12/16 Police Report at 1).

---

[1] The pertinent portions of the noise control ordinance are attached as **Exhibit 3**.

- *September 9, 2016, at approximately noon on the sidewalk in front of the abortion clinic*. Sergeant Bryant "advised [Nylen] that he could not use the sound amplifying device" at all. (**Ex. 5**, 9/9/16 Police Report at 1). This interaction was captured on video. (**Ex. 6**, Nylen Video 9/9/16).

- *September 23, 2016, at approximately noon on the sidewalk in front of the abortion clinic*. Officer Holtzhueter advised that Nylen's use of the amplifier could "potentially creat[e] a disturbance," and Nylen agreed not to use the amplifier. (**Ex. 7**, 9/23/16 Police Report at 2).

- *October 21, 2016, at approximately noon on the sidewalk in front of the abortion clinic*. Sergeant Bryant explained that Section 9.63(1) is simple: "No amplified device. Period." (**Ex. 6**, Nylen Video 10/21/16, at 00:06:53; **Ex. 8**, Bryant Video, at 16:40:06).

- *October 7, 2017, at approximately 1:00 p.m. on the sidewalk in front of Van Andel Arena in downtown Grand Rapids*. An unidentified officer instructed Nylen that the Noise Ordinance banned the use of amplified devices but that "if you want to stand there and yell—totally fine." (**Ex. 6**, Nylen Video 10/7/17, at 00:01:38).

- *December 31, 2017, at approximately 7:00 p.m. on the corner of Ottawa and Ionia Streets in downtown Grand Rapids*. An unidentified officer informed Nylen that if he did not stop preaching with an amplified device, then he would be cited or arrested. (**Ex. 2**, Nylen Dep. at 69-71).

These incidents occurred at three different locations within the City of Grand Rapids, and Nylen was preaching on a variety of religious topics, not merely on topics related to abortion. (*Id.* (discussing preaching a "New Year's message").

Sergeant Bryant was involved on two of these occasions. On September 9, 2016, Sergeant Bryant told Nylen, "No sound amplification device and no hollering, no yelling, all right?" and informed Nylen that he could speak only in an ordinary conversational tone. (**Ex. 6**, Nylen Video 9/9/16, at 00:05:05). The officers pointed out that, "If you read that ordinance [Section 9.63(1)] . . . you'll see . . . that it's pretty much a catch-all." (*Id.* at 00:06:15). *See also* (**Ex. 5**, 9/9/16 Police Report at 1) (officers "advised [Nylen] that he could not use the sound amplifying device").

On October 21, 2016, Sergeant Bryant again informed Nylen that the use of amplification devices was prohibited under the ordinance: "I explained to you before: no speaker stuff," (**Ex. 8**, Bryant Video, at 16:33:29), and, "No amplified device. Period."  (**Ex. 6**, Nylen Video 10/21/16, at 00:06:53; **Ex. 8**, Bryant Video, at 16:40:06).

> When Nylen asked what he was allowed to do, Sergeant Bryant informed him,
>
> SGT. BRYANT: You can speak, as long as you're not disturbing the public. Just keep it at a talking voice like you are doing right now. . . . But once you start yelling, now you are creating a disturbance.
> NYLEN: So is that what's illegal then, is me speaking above a certain decibel level?
> SGT. BRYANT: Yes.
> NYLEN: So . . . what decibel level . . .?

(**Ex. 6**, Nylen Video 10/21/16, 00:05:25, **Ex. 8**, Bryant Video, at 16:38:39). Nylen never received an answer. Sergeant Bryant unequivocally informed all relevant parties that Nylen would be cited the next time that he used an amplifying device to preach within City limits. Sergeant Bryant told this to Nylen (**Ex. 6**, Nylen Video 10/21/16, at 00:04:30; **Ex. 8**, Bryant Video, at 16:37:29), advised one of the neighbors similarly (**Ex. 8**, Bryant Video, at 16:52:49), wrote it in his official police report (**Ex. 9**, 10/21/16 Police Report at 1), and sent an email to fellow officers advising them to cite Nylen if they saw him using amplification (**Ex. 10**, Bryant Dep. at 12-13; **Ex. 11**, Email).

> **D.**   **Sergeant Bryant confirms that he will cite Nylen if Nylen uses a sound amplifier within Grand Rapids, regardless of the context of the speech.**

Sergeant Bryant testified in his subsequent deposition that he meant exactly what he said. Sergeant Bryant advised that, under the ordinance, "You're not supposed to use an amplified device. You have to be in a talking tone." (**Ex. 10**, Bryant Dep. at 17). When asked how loudly someone would need to be speaking before Section 9.63(1) applied, Sergeant Bryant stated that "you just judge it." (*Id.* at 19). When pressed, he said that Section 9.63(1) applies

whenever he knows "that this noise is not normal," by which he meant that the sound was not at the same volume "[l]ike we're talking right now." (*Id*. at 22). According to Sergeant Bryant, Section 9.63(1) does not allow for speakers to use any amplification device unless the device was "not being used in a manner that [the speaker's voice] would be amplified," such as if a speaker was "whispering into it." (*Id*. at 28). Notably, Sergeant Bryant specifically stated that he does not ever consider the location of the speaker when he determines whether a speaker may legitimately use an amplification device. (*Id*.). Finally, Sergeant Bryant also reiterated that, "if [Nylen] returned with the sound amplifying device and was using it," then Nylen would be cited under Section 9.63(1). (*Id*. at 10).

In response to Sergeant Bryant's instructions, Nylen has stopped preaching in front of the abortion clinic, both with and without amplification, but only because Sergeant Bryant told him not to use amplification, and only because he desires to obtain resolution from this Court about what conduct is legal and what conduct is not. (**Ex. 2**, Nylen Dep. at 63-64).

**E.      Nylen attempts to learn what Section 9.63(1) means, but the City refuses to tell him.**

After his contacts with officers, including Sergeant Bryant, Nylen attempted to determine from various City officials precisely what conduct is prohibited under the ordinance. After all, a violation of the Noise Ordinance is a criminal offense, with penalties up to and including a $500 fine, 90 days in jail, and the costs of prosecution. *See* City of Grand Rapids Ordinance § 1.13(1), (2). And Grand Rapids routinely prosecutes violations of Section 9.63(1), including 41 prosecutions in 2017 alone. (**Ex. 12**, Prosecution History).

On Sergeant Bryant's advice, Nylen contacted other open-air ministries, the police department, the City, the City Attorney's office, and a legal interest organization for advice about how to proceed. (**Ex. 2**, Nylen Dep. at 71-72). None of these avenues proved

6

fruitful. For example, one attorney in the office of the City Attorney advised Nylen to use "extreme caution" when preaching within City limits. (**Ex. 1**, Declaration ¶ 10-11). Nylen has also asked law enforcement officers if he can bring a decibel meter with him so that he can ensure that his speech is kept below a certain decibel-level.  But officers informed him that it did not matter how objectively loud or quiet his speech is; as long as someone complained about it, Nylen could be cited for creating "noise" that "disturbed" his auditors. (*Id*. ¶ 12).

The City has shed no more light on the issue after this litigation was filed. In its earlier briefing, the City acknowledged that Section 9.63(1) is "kludgy" and then simply rewrote the ordinance, using different words, all the while stating that its revision did not amount to a "final" interpretation of the ordinance. (Brief, R. 29, PageID.321-24). When asked to identify an individual who could testify on behalf of the City about the proper interpretation of Section 9.63(1), the City told Nylen that there was no such person. (**Ex. 13**, Defendant's Interrogatory Answers ¶ 6; **Ex. 14**, Letter dated June 1, 2018, at 3). When asked to admit either that the ordinance applies only to "unreasonably loud" sounds or, by contrast, applies also to sounds that are not "unreasonably loud," the City refused to advise, either way. (**Ex. 15**, Defendant's Responses to Request for Admissions ¶¶ 1-4).

Historical context is just as opaque. It turns out that the City of Grand Rapids has performed zero noise-control studies or analyses in the course of its history, and there is literally no legislative history pertaining to the promulgation of Section 9.63(1) other than the text of the ordinance itself. (**Ex. 13**, Defendant's Interrogatory Answers ¶¶ 4 & 5; **Ex. 16**, 1973 Ordinance).

With no person authorized to opine about the proper interpretation of Section 9.63(1), Nylen deposed Kristen Rewa, the Assistant City Attorney who is responsible for training Grand Rapids officers. Although all of the training materials seem to presume that Section

9.63(1) applies primarily to house parties (*i.e.*, where the sound is emanating from private property and can be heard on a public way, *see* **Ex. 17** (Training Documents)), it appears that officers are also told that Section 9.63(1) applies to noise that is made on the public way itself, such as a sidewalk. (**Ex. 18**, Rewa Dep. at 13-14). According to Ms. Rewa, if an officer believed that Section 9.63(1) prohibited all use of an amplified device on a public way, then the officer would be incorrect. (*Id.* at 25). That, of course, is precisely what Sergeant Bryant has repeatedly said.

In short, even after litigating this lawsuit for months, Nylen is no closer to determining what Section 9.63(1) means, and he is also going to be cited for using an amplifier regardless of the context of his speech. Nylen is well-versed in his obligations not to trespass on private property, to remain solely on public sidewalks or public park property, and not to disrupt the flow of pedestrian traffic on sidewalks or other public thoroughfares. Nylen intends to continue these regular practices when he engages in public speaking in the future. (**Ex. 1**, Nylen Declaration ¶ 5). Nevertheless, Sergeant Bryant has unequivocally indicated that Nylen will be cited if he engages in constitutionally protected speech; namely, preaching on a public sidewalk using only reasonably amplified speech. Because the relevant facts are undisputed, Nylen is entitled to summary judgment in favor of each of his claims.

## Argument

This Court has only two real options for how to resolve this case. Either (1) Section 9.63(1) is unconstitutionally vague because it prohibits sound only when an auditor subjectively believes that it is too loud, or (2) Section 9.63(1) is unconstitutionally overbroad because it uses an objective standard—a flat prohibition on all yelling or shouting or use of amplification devices—that is not narrowly tailored to a compelling state interest. The only

hypothetical way out of this dilemma is in truth a non-option, because the Court cannot hold that Section 9.63(1) does not actually mean what its plain language says.

Further, regardless of the construction that this Court may impose upon Section 9.63(1), Nylen is entitled to an injunction against Sergeant Bryant, who has unequivocally stated that (1) all use of an amplified device is prohibited under Section 9.63(1), unless the speaker is merely "whispering into it"; (2) he never assesses the context of the speaker when determining whether the use of an amplified device is permissible; and (3) if Nylen uses an amplified device in Grand Rapids again, then Nylen will be cited. Sergeant Bryant should be enjoined from citing Nylen under Section 9.63(1) unless and until Nylen's use of an amplified device is objectively unreasonable under the totality of the circumstances.

I.      **Section 9.63(1) is unconstitutionally vague.**

   A.   **An ordinance is unconstitutionally vague if it uses a purely subjective standard for measuring when sound becomes prohibitable.**

As explained more thoroughly in Nylen's previous briefing (which is incorporated by reference here rather than being replicated), noise-control ordinances that do not define the term "noise" by objective criteria are employing an intractably subjective standard in order to police the emanation of sound. Such an ordinance is unconstitutionally vague. *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972); *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971); *People v. N.Y. Trap Rock Corp.*, 442 N.E.2d 1222, 1226-27 (N.Y. 1982) (noting cases). Thus, it is not constitutional to prohibit activity that auditors find "annoying" or "unnecessary" or "disturbing," because those are purely subjective standards that can be readily deployed to silence unpopular speech. *See Reeves v. McConn*, 631 F.2d 377, 386 (5th Cir. 1980). By contrast, where an ordinance prohibits only "unreasonably loud" sound, it is generally constitutional. *Gaughan v. City of Cleveland*, 212 F. App'x 405, 412-13 (6th Cir. 2007).

**B.     It is unavoidable that Section 9.63(1) is not limited to unreasonably loud sounds.**

This is the text of Section 9.63(1), in full:

No person shall make, or cause, permit or allow to be made, upon a public way, or in such close proximity to a public way as to be distinctly and loudly audible upon such public way, any noise of any kind by crying, calling or shouting, or by means of any whistle, rattle, bell, gong, clapper, hammer, drum, horn, hand organ, mechanically operated piano, other musical instrument, wind instrument, mechanical device, radio, phonograph, sound amplifying or other similar electronic device; provided that a licensed peddler is not hereby restricted or prohibited so long as he or she shall have met the requirements and conditions hereinafter specified in subsection (5) nor does this prohibition apply to all bands and orchestras or similar musical bodies utilized as part of a parade or similar authorized musical production.

As the Court is aware, the court in *U.S. Labor Party v. Rochford*, 416 F. Supp. 204 (N.D. Ill. 1975), struck down a noise ordinance that was exactly identical to Section 9.63(1), ruling that it was both unconstitutionally vague and overbroad. That is not surprising, because the ordinance applies to "any noise of any kind," not merely to one kind of noise—*i.e.*, unreasonably loud noise. The interim of more than 40 years has not made the ordinance any less unconstitutional. The only real question, therefore, is whether there is any reason to suspect that, under Michigan law, Section 9.63(1) has a different meaning than the identical language had under Illinois law in *Rochford*. For several reasons, there is not.

**1.     Michigan state courts would apply Section 9.63(1)'s plain language and would not import a reasonableness standard that is not already there.**

First, "it is not within [a federal court's] power to construe and narrow state laws." *Grayned*, 408 U.S. at 110; *see also Smith v. Goguen*, 415 U.S. 566, 575 (1974). Only "if the state courts in question have applied a narrowing construction to a similar statute" may this

Court import a reasonable-person standard into Section 9.63(1). *Gaughan*, 212 F. App'x at 410. The state courts have not done so. Neither may this Court.

Michigan courts notoriously interpret statutory text on its plain language alone. *Covenant Med. Ctr., Inc. v. State Farm Mut. Auto. Ins. Co*., 895 N.W.2d 490, 495 (Mich. 2017). The same rigorous principles of interpretation are applied to municipal ordinances. *Great Lakes Soc'y v. Georgetown Charter Twp*., 761 N.W.2d 371, 380 (Mich. Ct. App. 2008). "[W]hen the language used in an ordinance is clear and unambiguous, [Michigan courts] may not engage in judicial interpretation, and the ordinance must be enforced as written." *Kalinoff v. Columbus Twp*., 542 N.W.2d 276, 277 (Mich. Ct. App. 1995). *See also Sau-Tuk Indus. v. Allegan Cnty*., 892 N.W.2d 33, 45 (Mich. Ct. App. 2016).

The same principles apply to Michigan's doctrine of constitutional avoidance. Michigan courts will construe a statute narrowly only if the plain statutory language is fairly susceptible to a limiting construction. *In re Treasurer of Wayne Cty. for Foreclosure*, 732 N.W.2d 458, 463 (Mich. 2007) ("[T]he plain language of the statute simply does not permit a construction that renders the statute constitutional."). The Court is not permitted to avoid the "ordinary meanings" of the terms used in the ordinance in question. *People v. Rapp*, 821 N.W.2d 452, 458–59 (Mich. 2012). Here, the phrase "any noise of any kind" is perfectly plain; it is not susceptible to a judicial gloss holding that it actually means something different than what it says.

Far from holding that an ordinance similar to Section 9.63(1) is bounded by an unspoken "reasonable person" standard, the Michigan courts have in fact held the opposite. Reversing a similar portion of Grand Rapids noise ordinance, the court in *People v. Gasper* refused to adopt a narrowing construction of Section 9.63(3) of Grand Rapids' noise control

ordinance and struck it down as impermissibly subjective and vague. 888 N.W.2d 116, 122 (Mich. Ct. App. 2016). The court did not read a "reasonable person" standard into the ordinance. Similarly, in *United Pentecostal Church v. Steendam*, the court held that an ordinance prohibiting "unnecessary" noise that "annoy[ed]" auditors was unconstitutionally vague. 214 N.W.2d 866, 867-88 (Mich. Ct. App. 1974). Again, the court did not attempt to import a "reasonable person" standard in order to save the ordinance from unconstitutionality.

In fact, Michigan has recognized that an explicit reasonable-person standard serves important objectives: it gives citizens fair notice of what is prohibited. In *Township of Plymouth v. Hancock*, for example, the court held that "the use of the reasonable person standard in the ordinance saves the ordinance from being impermissibly vague." 600 N.W.2d 380, 382–83 (Mich. Ct. App. 1999). That is because "the reasonable person standard serves to provide fair notice of the type of conduct prohibited, as well as preventing abuses in application of the ordinance." *Id*. at 382–83.

Section 9.63(1), by contrast, facially prohibits "any noise of any kind." "Such a prohibition . . . has the inevitable effect of chilling protected speech, for to avoid committing a crime, the speaker must err on the side of caution and never yell, shout, hoot, whistle, or sing within the City limits." *Clary v. City of Cape Girardeau*, 165 F. Supp. 3d 808, 821 (E.D. Mo. 2016). And when a regulation imposes criminal penalties, these vagueness concerns are enhanced. *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 498-99 (1982).

Importing a reasonable-person standard into an ordinance that very obviously does not have one would fail to give potential speakers fair notice of what sort of conduct is permitted. The Michigan courts have wisely refused to allow ordinances that touch First

Amendment interests to be interpreted in a manner that is wholly opposite to their plain language.

### 2.      Section 9.63(1) is not limited to only "unreasonably loud noise."

Where Michigan courts have upheld challenged ordinances, it is because the ordinances either specifically recite a "reasonableness" standard or include language that is fairly susceptible as employing such a standard. Language is fairly susceptible of such a standard only where it clearly applies to speech that would be unreasonably excessive, no matter the context. In *Lansing v. Hartsuff*, for example, a breach-of-the-peace ordinance prohibited only "loud and boisterous" conduct, which the court deemed was a reasonable proxy for "unreasonably loud" conduct. 539 N.W.2d 781, 785 (Mich. Ct. App. 1985). There is no such language in Section 9.63(1).

Because the Michigan courts wouldn't import into Section 9.63(1) a reasonable-person standard that isn't there, the only way to save the ordinance is to find that it has some explicit tie only to the same type of language that was found sufficient in *Lansing*. Unfortunately for the City, when applied to Section 9.63(1), that is a quest without end.

### a.      "Noise" does not mean "unreasonably loud noise."

First, the term "noise" is not itself synonymous with "unreasonably loud" noise. That is neither the plain meaning of the word "noise,"[2] nor are there are any indications that the

---

[2] One dictionary defines the term as including "any sound that is undesired . . ." or "sound or a sound that lacks agreeable musical quality . . . ," WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1533 (2002), while another defines "noise" as including "a sound of any kind: *to hear a noise at the door*." RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 1305 (2d ed. 2001). Other sources similarly define "noise" as encompassing "any sound" or "undesired sound." The American Heritage College Dictionary, for example, defines noise as including "sound or a sound that is loud, unpleasant, unexpected, or undesired," and "sound or a sound of any kind." *Id*. at 944 (4th ed. 2007). The Random House Dictionary of the English Language expounds: "NOISE, CLAMOR, DIN, HUBBUB, RACKET refer to unmusical or confused sounds. NOISE

ordinance uses the term idiosyncratically. In fact, all the internal clues point the opposite way. For example, Section 9.62(9) defines "Fluctuating Noise" as "*a noise whose sound pressure level varies significantly* but does not equal the ambient environmental level more than once during the period of observation." (PageID.121). Section 9.62(12) similarly defines "Intermittent Noise" as "*a noise whose sound pressure level equals the ambient environmental level* two (2) or more times during the period of observation." Obviously, if the sound pressure of the "noise" equals the ambient environmental level, then it is not unreasonably loud; it is merely the same volume as everything else. Section 9.62(12) then goes on to reference "the ambient *noise* level." And Section 9.62(20) defines "Sound Level" interchangeably with "Noise Level." When the term "noise" is used in the rest of the ordinance simply to mean "sound," there is nothing to suggest that the term "any noise of any kind" in Section 9.63(1) unaccountably means only "unreasonably loud noise."

Nylen has been unable to locate a case anywhere in the country—much less in Michigan—that has held that the term "noise" refers not merely to sound but to "unreasonably loud" sound. The ordinances in each case refer to "loud noise" or "excessive noise" or "unreasonable noise" or the like. The prerequisite to constitutionality is for an ordinance to contain language that limits the sweep of the ordinance only to noise that is inevitably excessive, no matter the context. That is what the "loud and boisterous" language did in *Lansing*. But there is no such language here. Nor does Section 9.63(1)'s list of enumerated devices limit the ordinance's scope to only unreasonably loud sounds. The list includes, for example, any noise of any kind made by "crying," "calling," a "musical instrument," or a "wind instrument." An Aeolian harp is not likely to be on anyone's list of "unreasonably loud" noise-generators. Section

is the general word and is applied equally to soft or loud, confused or inharmonious sounds: *street noises*." *Id*. at 1305 (2d ed. 1987).

9.63(1) contains no language limiting it to sounds that are inevitably excessive, no matter the context.

> **b.      The rules of grammar preclude an interpretation that noise made upon a public way must be "distinctly and loudly audible."**

The relevant grammar does not allow the Court to bootstrap the noise made "upon a public way" a requirement that the noise must be "distinctly and loudly audible." Pertinent to Nylen, the ordinance reads, "_No person shall make_, or cause, permit or allow to be made, _upon a public way_, or in such close proximity to a public way as to be distinctly and loudly audible upon such public way, _any noise of any kind by [the enumerated means]_." § 9.63(1) (emphases added). Thus, the ordinance's second element consists of an alternative between (1) sound made "upon a public way" or (2) sound made "in such close proximity to a public way as to be distinctly and loudly audible upon such public way." Grammatically, the phrase "as to be distinctly and loudly audible upon such public way" is a non-essential clause, offset by commas. This Court cannot apply the "distinctly and loudly audible" portion of the ordinance to sound that is made upon a public way unless the Court violates the rules of grammar and reads the ordinance in a way that no ordinary layperson would.

Not that doing so would preserve the constitutionality of Section 9.63(1), anyway. A limiting construction of an ordinance saves its constitutionality only where the resulting interpretation reasonably approximates a prohibition on "unreasonably loud" noises. _See, e.g._, _Gaughan_, 212 F. App'x at 411. Here, even if the phrase "distinctly and loudly audible" applied to sound made upon that very same public way, it would limit the ordinance almost not at all; it would apply to virtually all speech uttered upon the public way. After all, even ordinary conversation would be "distinctly and loudly audible" on a public way if it was, in fact, uttered on the public way itself. By way of example, the court in _Hassay v. Mayor_ observed that

"virtually every sound" made on a boardwalk in Ocean City, Maryland, "was audible at a distance of more than thirty feet, including a conversation and the sound of someone walking in flip flops." 955 F. Supp. 2d 505, 513 (D. Md. 2013). *See also Deegan v. City of Ithaca*, 444 F.3d 135, 143 (2d Cir. 2006) (striking down a prohibition of all sound that could "be heard 25 feet" from its source). It would therefore do no good to violate the rules of grammar in an attempt to save Section 9.63(1), as the result would still be unconstitutional.

### c.    There can be no resort to the ordinance's generalized purpose.

This Court cannot rely upon Section 9.63(1)'s generalized purpose to overcome its plain language. Michigan law is very clear on this point: "[R]eliance on the perceived purpose of the statute runs counter to the rule of statutory construction directing [the Court] to discern legislative intent from plain statutory language." *People v. Pinkney*, 912 N.W.2d 535, 541 (Mich 2018). "When the plain and ordinary meaning of statutory language is clear, judicial construction is neither necessary nor permitted." *Perkovic v. Zurich Am. Ins. Co*., 893 N.W.2d 322, 327 (Mich 2017).

There is no legislative history whatsoever that suggests that the City intended to do anything other than enact the plain language of the ordinance that was adopted. Asked for all materials that would aid in the interpretation of Section 9.63(1), the City produced nothing in discovery other than the text of the ordinance. (**Ex. 14**, at 3; **Ex. 16**). Nor has the City ever performed any noise studies whatsoever. (**Ex. 13**, ¶¶ 4-5). The City simply copied Chicago's unconstitutional ordinance wholesale, without determining how it worked or whether it was necessary.

Finally, the context of Section 9.63(1) shows quite clearly that the City has intentionally decided not to adopt a "reasonable-person" standard in Section 9.63(1). The City clearly knows how to prohibit "unreasonable" noises, if it so chooses. Section 9.63(3), for

example, does exactly that. *See id.* (prohibiting use of premises in a manner that "unreasonably" disturbs the peace). If Section 9.63(1) applied only to "unreasonable" noise, it would say so. The best reading of that difference is that subsection (3) applies to unreasonably loud noises, and subsection (1) does not. Further, the specific decibel levels set forth in the remainder of the noise ordinance are not bounded by any free-standing "reasonable-person" standard; instead, they set forth absolute prohibitions, regardless of context. Importing a background "reasonable-person" standard into the ordinance would throw off the City's ability to enforce the rest of its Noise Ordinance.

This Court cannot save Section 9.63(1) by finding that it has a secret, non-textual meaning that cannot be discerned from an ordinary grammatical reading of the ordinance. Because its plain language "provides virtually no guidance to a citizen in determining whether his or her conduct is prohibited," the ordinance is unconstitutional. *Gasper*, 888 N.W.2d at 121.

### 3. The City has not bound itself—through practice or otherwise—to any single interpretation of Section 9.63(1), much less a non-vague one.

Nor can the City avoid Section 9.63(1)'s text by saying that it has an idiosyncratic but definitive legal interpretation of Section 9.63(1) that imports an extra-textual reasonable-person standard, such that First Amendment activity in Grand Rapids is adequately safeguarded.

First, despite repeated requests, the City has never informed Nylen about what it believes that Section 9.63(1) actually prohibits. This litigation could have been avoided or resolved if the City had simply told Nylen what Section 9.63(1) actually applies to. But even at this late stage in the game, the City appears to still hold the view that it can keep Nylen guessing. That is exactly what the vagueness doctrine prohibits. *Coates*, 402 U.S. at 614. *See also Speet v. Schuette*, 726 F.3d 867, 873 (6th Cir. 2013) ("It is impossible to determine whether a statute reaches too far without first knowing what the statute covers.").

Second, even if the City comes up with a new, atextual interpretation that it now advances, this Court may not "presume[ ]" that the Defendants will "adhere to standards absent from the ordinance's face." *City of Lakewood v. Plain Dealer Pub. Co*., 486 U.S. 750, 770 (1988). In fact, this Court must presume the opposite. *Id.* "To affect the constitutional analysis, such a limiting construction must 'be made explicit by textual incorporation, binding judicial or administrative construction, or well-established practice.'" *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1035 (9th Cir. 2006) (quoting *City of Lakewood*, 486 U.S. at 770). There is no such explicit limiting construction here.

First, there is no binding judicial or administrative construction that explicitly establishes that Section 9.63(1) includes an implicit reasonable-person standard. The City informed Nylen during discovery that there was nobody at the City who could render an opinion about what the correct interpretation of Section 9.63(1) is. The City also refused to answer Nylen's requests for admissions, which asked the Defendants to identify whether Section 9.63(1) applied only to unreasonably loud sound or not. Without even admitting that anyone at the City can give a definitive statement of the ordinance's meaning, the City cannot simply advance an atextual interpretation of Section 9.63(1) for the first time now.

Second, the City does not have a "well-established" practice of limiting application of Section 9.63(1) to only unreasonably loud noises. As is clearly evident from the varying interpretations given by the different officers, they believe that the ordinance applies to all manner of speech. Sergeant Bryant, for his part, advises citizens that none of them may use an amplified device, ever. (**Ex. 10**, Bryant Dep. at 17). And with respect to whether someone is "yelling" or "shouting" in such a manner that it violates the ordinance, Sergeant Bryant simply

"judges" it. (*Id.* at 19). According to Sergeant Bryant, the ordinance applies whenever the volume exceeds the volume of a normal talking tone. (*Id.* at 22).

These are all the hallmarks of an incurably vague ordinance. It does not define its operative terms. It does not include an explicit reasonable-person standard. It is primarily enforced when officers assess in their own judgment that the volume is too loud, and when auditors complain about it. Because speakers are unsure about when exactly their speech will trigger the ordinance, they do not necessarily know that they are violating it until after the fact. *See Clary*, 165 F. Supp. 3d at 821. Section 9.63(1) is almost the perfect type of an unconstitutionally vague ordinance. This Court cannot save it by reading into it a reasonable-person standard that is not there.

## II. Section 9.63(1) is overbroad and not narrowly tailored to a compelling government interest.

### A. A blanket prohibition on "any noise of any kind" on a public way is significantly overbroad.

To the extent that Section 9.63(1) is not vague, it is overbroad. *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County*, 274 F.3d 377, 387 (6th Cir. 2001). It prohibits "any noise of any kind" by means of "crying, calling or shouting" on public sidewalks, which are "'prototypical' examples of public fora." *American-Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600, 605 (6th Cir. 2005) (citation omitted). *See also McCullen v. Coakley*, 134 S. Ct. 2518, 2529 (2014). A citizen may "call" any number of political slogans or "shout" warnings to pedestrians on the public street. This lawsuit is not only about Nylen and is not only about speech related to abortion. Section 9.63(1) applies—impermissibly—to all sorts of speakers on all sorts of topics, including speech related to anti-Trump rallies, pro-immigration protests, or the Black Lives Matter demonstrations, among others. (**Exs. 19**, **20** & **21** (news articles noting protests in Grand Rapids)).

19

Banning all use of amplified devices, regardless of volume or context, is also prohibited by the First Amendment. *See Kovacs v. Cooper*, 336 U.S. 77, 81–82 (1949); *Saia v. New York*, 334 U.S. 558, 561 (1948); *Reeves*, 631 F.2d at 384; *Jim Crockett Promotion, Inc. v. Charlotte*, 706 F.2d 486, 491 (4th Cir. 1983). The court in *Rochford* correctly found the identical language to be overbroad. *Rochford*, 416 F. Supp. at 206-07.

**B.    Section 9.63(1) is not narrowly tailored to a compelling government interest.**

**1.    Section 9.63(1) is content-based.**

First, Section 9.63(1) is not content-neutral. It carves out an exception for "licensed peddlers" and "bands and orchestras" that are part of a parade or otherwise "authorized." Neither the licensing requirements for peddlers nor the procedure for "authorizing" a musical troupe is clear. Suffice to say, a person who wants to use amplification to spread political rhetoric is in a different position vis-à-vis Section 9.63(1) than a peddler who wants to spread commercial speech (who can obtain a license) or a musician who wants to spread artistic speech (who can get "authorization"). Neither the license nor the nebulous "authorization" is available to a political speaker, solely because of the nature of his speech. Because the ordinance's escape hatches turn on the nature of the speech, it is content-based. *See Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2230 (2015) ("[A] law banning the use of sound trucks for political speech—and only political speech—would be a content-based regulation."); *Planet Aid v. City of St. Johns*, 782 F.3d 318, 329 (6th Cir. 2015) ("[A] speech regulation can be viewpoint-neutral but content-based."). There is no suggestion that Section 9.63(1) can survive strict scrutiny. It is therefore unconstitutional.

>      2.      **The City has not proved a "close fit" between Section 9.63(1) and a**
>              **significant government interest.**

Even assuming that Section 9.63(1) is content-neutral, it is not narrowly tailored.

*Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). It is the City's burden to prove that its

ordinance is narrowly tailored. *United States v. Doe*, 968 F.2d 86, 89 (D.C. Cir. 1992). "[B]y

demanding a close fit between ends and means, the tailoring requirement prevents the

government from too readily sacrificing speech for efficiency." *McCullen v. Coakley*, 134 S. Ct.

2518, 2534 (2014).

Section 9.63(1) is the opposite of narrow. It is self-evidently drafted as broadly as

possible ("any noise of any kind") so that it can be applied to the widest possible swath of

speech. The City has not tried to regulate loud speech in a more targeted manner, nor has it ever

studied alternative ways of doing so. There is no evidence that shows that the City "seriously

undertook to address the problem with less intrusive tools readily available to it." *McCullen*, 134

S. Ct. at 2539. Instead, the City has stuck with an ordinance that prohibits all use of things like

"phonographs" more than 40 years after the very same language was ruled unconstitutional.

Section 9.63(1) facially prohibits all amplification and music, regardless of

volume. It also, according to the Defendants, prohibits all human speech louder than normal

conversational tone. Neither of those inflexible prohibitions is constitutional. *See Reeves*, 631

F.2d at 384 (striking down ordinance prohibiting all sound amplification in Houston's downtown

business district except for during 7 hours of one day of the week); *U.S. Labor Party v.

Pomerleau*, 557 F.2d 410, 413 (4th Cir. 1977) (striking down ordinance prohibiting

"amplification that creates no more noise than a person speaking slightly louder than normal").

*See also Deegan*, 444 F.3d at 143 (striking down a prohibition of all sound that could "be heard

25 feet" from its source); *Doe*, 968 F.2d at 90-91 (striking down prohibition of all sound louder

than 60 decibels within national parks); *Harman v. City of Santa Cruz*, 261 F. Supp. 3d 1031, 1043 (N.D. Cal. 2017); *Hassay v. Mayor*, 955 F. Supp. 2d 505, 527 (D. Md. 2013); *Howard Opera House Assocs. v. Urban Outfitters, Inc.*, 131 F. Supp. 2d 559, 567 (D. Vt. 2001) ("[A] ban on all sound, amplified or unamplified, that can be heard through walls or from the street burdens substantially more speech than is necessary to further the City's legitimate interest in eliminating excessive noise.").

Under *Doe*, the City's failure to do any investigation into the necessity for Section 9.63(1) dooms its constitutionality. 968 F.2d at 90-91. The City has also wholly failed to establish why it has any interest in prohibiting via Section 9.63(1) the very same things that the subsequent sections of its noise ordinance expressly allow. Section 9.63(1) prohibits hand organs and musical instruments and radios, but Sections 9.63(2) and 9.70 expressly permit them. The City permits—in public ways—sounds created by heavy equipment (90-decibel maximum volume), motorcycles (82 decibels), automobiles (79 decibels), lawnmowers, chainsaws and other equipment, (65 to 80 decibels), and sound trucks (80 decibels). (§ 9.63(7); § 9.63(9); § 9.76). If the average decibel level of conversational speech is approximately 60 decibels,[3] then the City is by ordinance allowing a veritable riot of vehicular and mechanized sounds on public streets and sidewalks that are exponentially[4] louder than the sounds that the Defendants claim are prohibited by Section 9.63(1). Section 9.63(1) cannot be narrowly tailored to the prohibition of

---

[3] The Occupational Safety and Health Administration advises that "conversation" from a distance of about 3 feet generally registers 60 dBA. *See* OSHA Technical Manual, Section III: Chapter 5 - Noise, at 4, Fig. 3 (**Ex. 22**, at 4). This Court may take judicial notice of documents produced by OSHA. *See Fadaie v. Alaska Airlines, Inc*., 293 F. Supp. 2d 1210, 1214 (W.D. Wash. 2003).

[4] "Decibels are measured on a logarithmic scale: a small change in the number of decibels indicates a huge change in the amount of noise . . ." (**Ex. 22**, OSHA Technical Manual, at 4). *See also* Noise Ordinance § 9.62(21).

only unreasonably loud sounds when the City simultaneously permits a much louder din to occur at the same time in the same place. *Cf. Hassay*, 955 F. Supp. 2d at 524 (municipality cannot claim that music is unreasonably loud when it is audible at thirty feet where other portions of its ordinance prohibit the sound of human voices as unreasonably loud only where it is audible at fifty feet or more).

### 3.    Nylen has no alternative means of exercising his rights.

To the extent that the City suggests that Section 9.63(1) can be saved because Nylen could always request a variance under Section 9.69 of the noise ordinance, the City is mistaken. Ordinarily, individuals cannot be required to obtain permits before speaking in public fora; permits can be required only of larger groups that pose safety or other administrative concerns. "Permit schemes and advance notice requirements that potentially apply to small groups are nearly always overly broad and lack narrow tailoring." *Am.-Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600, 608 (6th Cir. 2005). That is in part because a government actor cannot simply ban all First Amendment-protected speech and then require individual citizens to ask for permission to exercise their First Amendment rights on discrete occasions, unless there is an overarching public safety interest in doing so. *Id.*

Here, the notice requirement on its own defeats the City's theory. Sections 9.69(3) and (4)(a) would require that an individual like Nylen proceed through an administrative process and comply with a mandatory notice requirement (including publication in a daily newspaper) before raising his voice or using amplification on the sidewalk. "Any notice period is a substantial inhibition on speech." *Am.-Arab Anti-Discrimination Comm.*, 418 F.3d at 605. A variance is not a true option for Nylen.

Nor is unamplified speech an adequate alternative to amplified speech. "The right to communicate inherently comprehends the right to communicate effectively. The mere

23

existence of an alternative means of expression—in this case, unamplified speech—cannot by itself justify a restraint on some particular means that the speaker finds more effective." *Reeves*, 631 F.2d at 382. For Nylen, amplification is not simply a medically useful device, but it is also part of an important rhetorical strategy: he can achieve an increased volume of speech without sounding as if he is yelling at passersby. Nylen is entitled to use reasonable levels of amplification; he cannot be forced into a different mode.

### III.    Nylen is entitled to an injunction and damages against Sergeant Bryant.

Regardless of whether Section 9.63(1) contains an implicit reasonable-person standard and is therefore not unconstitutional, Nylen is still entitled to at least two forms of relief against Sergeant Bryant.

First, he is entitled to damages. Although there may be an issue of fact with regard to whether Nylen's volume was unreasonably loud when Sergeant Bryant told him to stop using the amplified device, Sergeant Bryant also prevented Nylen from continuing to use the amplified device at all on each date in question, even at a reasonable volume. That is on its own a First Amendment violation, because it prevented Nylen from engaging in reasonably amplified free speech. *Reeves*, 631 F.2d at 382. Nor is Sergeant Bryant entitled to qualified immunity. He has advised that he never considers the location of the speaker when determining that the speaker may not use amplification. But the cases are very clear that loud speech may be regulated only if it is unreasonably loud—a determination that necessarily requires analysis of the context of the speaker. This rule is clearly established: "The nature of a place, the pattern of its normal activities, dictate the kinds of regulations of time, place, and manner that are reasonable." *Grayned*, 408 U.S. at 116. *See also Kovacs*, 336 U.S. at 81–82.

Second, Nylen is entitled to an injunction. The City's earlier briefing pshawed at Nylen's argument, asserting that Nylen was creating "a strawman ordinance that prohibits any

speech above either a whisper, or 'ordinary conversational tone.'" (Brief, R. 29, PageID.317). But Sergeant Bryant has said that Section 9.63(1) means *exactly* that. Sergeant Bryant has advised that he will cite Nylen the next time that Nylen is using an amplified device. Sergeant Bryant has also unequivocally indicated that he does not ever take into consideration the context of the speaker when he is determining whether a citizen can use an amplified device or not. Any time that the volume of the amplified device is above a "whisper," Sergeant Bryant will enforce the ordinance. That is to say, Sergeant Bryant has specifically indicated that he will cite Nylen the next time that he sees Nylen using an amplified device, even if Nylen's use of the amplified device is not unreasonably loud, given the context of the speech. Sergeant Bryant has even emailed his fellow officers to ensure that Nylen will be cited accordingly.

Sergeant Bryant has a very tough job and is no doubt trying to take Section 9.63(1) at face value. Unfortunately, however, his assertion that he will cite Nylen for using an amplified device regardless of whether Nylen's volume is reasonable is not consistent with the First Amendment. The First Amendment protects the right to reasonably amplified speech, and such speech can be prohibited only if it is unreasonably loud, in light of the surrounding circumstances. *Deegan*, 444 F.3d at 143; *Reeves*, 631 F.2d at 382; *U.S. Labor Party*, 557 F.2d at 413; *Maldonado v. Monterey Cty.*, 330 F. Supp. 1282, 1286 (N.D. Cal. 1971) (A flat prohibition of "any amplification of the human voice above a normal speaking level . . . on the public highways" is unconstitutionally overbroad.) Sergeant Bryant must be enjoined from enforcing Section 9.63(1) against Nylen without any regard to Nylen's location or context.

## Conclusion

The Court should enter summary judgment in favor of Nylen and against the defendants, including a permanent injunction preventing them from enforcing City of Grand Rapids, Noise Control Ordinance, § 9.63(1).

MILLER JOHNSON
Attorneys for Plaintiff

Dated:  August 29, 2018          By  /s/ Stephen J. van Stempvoort
                                         Stephen J. van Stempvoort (P79828)
                                 Business Address:
                                         45 Ottawa Avenue SW, Suite 1100
                                         Grand Rapids, MI  49503
                                 Telephone:  (616) 831-1700
                                 Email:  vanstempvoorts@millerjohnson.com

26